# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:11CV34-RJC-DSC

| | |
|---|---|
| NADA FELDMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **MEMORANDUM AND RECOMMENDATION** |
| CHARLOTTE-MECKLENBURG ) | |
| BOARD OF EDUCATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**THIS MATTER** is before the Court on "Defendant's Partial Motion to Dismiss" (doc. 10) filed March 31, 2011, and the parties' associated briefs and exhibits (doc. 11, 13 and 15).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Partial Motion to Dismiss be <u>granted</u>, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Taking as true the factual allegations of the Complaint (doc. 1), Plaintiff Nada Feldman was hired by Defendant Charlotte-Mecklenburg Board of Education ("CMS") on August 23, 2006, as an eighth-grade language arts teacher at Alexander Middle School. Plaintiff is Jewish. Compl. ¶ 16. Over the course of Plaintiff's employment with CMS, she was transferred to four different sites: from Alexander Middle School to Ranson Middle School in October 2007 (<u>Id.</u> at ¶ 29); from Ranson Middle School back to Alexander Middle School in early 2008 (<u>Id.</u> at ¶ 54); from Alexander Middle School to Piedmont Middle School in June 2009 (<u>Id.</u> at ¶ 69); and from Piedmont Middle School

to Bradley Middle School in September 2009 (Id. at ¶ 80).

Plaintiff alleges that beginning in February 2007, she experienced difficulty with her students, coworkers, supervisors, and overall working conditions that created a "hostile work environment" for the duration of her employment. Id. at ¶¶ 18, 28, 50, 85. Plaintiff alleges that she was subjected to numerous physical assaults by her students. Id. at ¶¶ 22, 31, 32, 41-44. Plaintiff also alleges that she was subjected to numerous verbal assaults by her students who called her "a bitch, whitey, racist and grandma" (Id. at ¶ 21); told her "Go to hell white bitch" (Id. at ¶ 42); chanted "Mrs. Feldman wants to rape us" (Id. at ¶ 42); and told her "You're gonna die, I'm gonna kill you." (Id. at ¶ 44). Plaintiff wrote a letter to the Board Superintendent, Dr. Peter Gorman, on December 31, 2007, complaining of the physical assaults and abusive "racial, sexual slurs" she experienced from students and parents. Id. at ¶ 47. She indicated that she "was frightened, in a survivor mode, and in fear of being harmed." Id. Plaintiff does not allege that she notified Dr. Gorman of any incidents of religious discrimination in this letter. Dr. Gorman responded to Plaintiff by email and indicated she should discuss her request to transfer to another school with Human Resources and her principal. Id. at ¶ 48.

Plaintiff also alleges that she complained about numerous incidents of inappropriate conduct by staff and supervisors during her employment with Defendant, including being unjustly accused by school principals of using profanity in classroom (Id. at ¶¶ 23, 27, 52); assaulted by an Assistant Principal (Id. at ¶ 26); publicly humiliated in front of students (Id. at ¶¶ 25, 29, 51, 52); subjected to a campaign by a former substitute teacher to have her fired (Id. at ¶¶ 33, 35, 47); and having her authority over her students unfairly questioned by staff and supervisors (Id. at ¶¶ 29, 34, 40, 46, 51, 56). Despite Plaintiff's numerous allegations of harassment by her coworkers and students, nowhere does she allege that any of the incidents were motivated by any animus towards her Jewish faith.

In fact, Plaintiff's only allegation regarding her religion is that on February 26, 2009 she reported to Principal Joanna Smith that a student had stated that "The only good Jew is a dead Jew." Id. at ¶ 60. According to Plaintiff, "the student did not receive the appropriate discipline." Id.

Plaintiff alleges that in February 2009 she notified Principal Smith that she had a medical condition known as Multiple Chemical Sensitivity ("MCS"). Id. at ¶ 58. Plaintiff alleges that Principal Smith refused to "comply with the Plaintiff's medical condition as needed." Id. at ¶ 63. Plaintiff alleges that on March 9, 2009, she requested a transfer. Id. at ¶ 64. Plaintiff alleges that on March 13, 2009, she was informed that her "medical accommodation request" was approved by Defendant." Id. at ¶ 66 and Ex. 3. Plaintiff alleges that in June 2009 she was notified of her assignment to Piedmont Middle School under the supervision of Principal Deirdra Gardner. Id. at ¶ 70.

Plaintiff alleges that during a meeting on June 24, 2009, between Plaintiff and Principal Gardner, she was informed that Principal Gardner "could not accommodate odors and scents in the classroom." Id. at ¶ 71. During this same conversation, Plaintiff alleges that Principal Gardner indicated that she "would not fit in their educational culture." Id. at ¶ 72. Plaintiff further alleges that Principal Gardner called her a "Yankee" three times during this meeting, and when asked what the term meant, stated "it meant a person who does not chit chat and is direct in conversation." Id. at ¶ 76. Plaintiff further alleges that on July 8, 2009, Plaintiff informed Director of the Central Learning Community John Brady that Principal Gardner "openly indicated her disdain for the black students racially." Id. at ¶ 77. Plaintiff found Gardner's remarks "racially motivated, discriminatory and appalling." Id.

Plaintiff's Complaint then references September 2009 after she was transferred to Bradley

3

Middle School. Plaintiff alleges that on September 8, 2009, she was exposed to "harsh bleach" and her complaint was ignored. Id. at ¶ 80. Plaintiff alleges that on September 9, 2009, Assistant Principal Etheridge demanded she open the door to her classroom after "perfumed substances" were sprayed outside Plaintiff's classroom door. Id. at ¶ 81. Plaintiff alleges that Assistant Principal Etheridge, who was the former Assistant Principal at Alexander Middle School and "had verbally assaulted, directed personally abusive names, physically assaulted and battered the Plaintiff at the prior middle school", was aware of Plaintiff's health condition. Id. at ¶ 82-83. Plaintiff alleges that she sent an email to CMS on October 1, 2009, indicating that she had been forced to resign due to CMS' "failure to provide a safe working environment and meeting her employer-provided ADA accommodations and continues to knowingly violate her civil rights." Id. at ¶ 86. See also Compl., Exhibit 4.

On December 15, 2009, Plaintiff filed a charge of discrimination with the EEOC and asserted claims of discrimination based on religion and disability. Plaintiff alleged in her charge that:

> [F]rom on or about August 2008 through September 9, 2009, I have been subjected to disparate treatment because I am Jewish. In addition, I have been denied a reasonable accommodation. On September 9, 2009, I was forced to resign from my position because the above employer told me they could not grant me a safe environment and that I should resign.

Doc. 13, Ex. 6. In support of her allegation of discrimination on the basis of her religion, Plaintiff's attached letter stated that during a conversation with Principal Gardner on June 26, 2009, Gardner said the following:

> You asked me during our conference about my perception of your ability to fit in at Piedmont. To answer your question, I am concerned that you will not fit. However, I need to be clear that our student

4

> population may bring odors that you find offensive and noticeable, and it will not be possible to isolate you from that. I worry that your health, already at risk, will suffer because of the stress.

Id. Plaintiff alleged that the remarks "were threats to my social acceptance and belonging as they occur in the context of diverse phenomena such as rejection, discrimination, ostracism, betrayal, and stigmatization." Id. Plaintiff concluded the attached letter by stating "I was the only Jewish teacher moved from Alexander Middle School in Charlotte Schools to Piedmont Middle School. Ms. Gardner's behavior was rejection that personally had a negative affect to lower my self esteem. Ms. Gardner's behavior in this situation was contextual prejudice." Id. Plaintiff alleged no further examples of religious discrimination in her EEOC Charge.

On October 25, 2010, the EEOC issued Plaintiff a Letter of Dismissal and Notice of Rights that informed her of her right to sue. Compl. at ¶ 12. See also Compl., Ex.2. On January 20, 2011, Plaintiff commenced this action against Defendant. In her Complaint, Plaintiff asserts four causes of action against Defendant: (1) violation of Americans with Disabilities Act (ADA); (2) Title VII retaliation; (3) violations of the State Constitution; and (4) Title VII workplace harassment.

On March 31, 2011, Defendant filed this Partial Motion to Dismiss (doc. 11). Defendant argues that pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Plaintiff's claims for retaliation and workplace harassment under Title VII and Plaintiff's claims for violations of Article 1, §§ 1 and 19 of the State Constitution should be dismissed. More specifically, Defendant argues that Plaintiff's claims for retaliation and workplace harassment under Title VII fail because they exceed the scope of Plaintiff's EEOC charge and therefore, must be dismissed for lack of subject matter jurisdiction. Additionally, Defendant argues that the Title VII claims fail because Plaintiff does not allege facts to support them. Finally, Defendant argues that Plaintiff's State

Constitutional claims fail because she has not stated any claims for which constitutional relief can be granted.

In her Brief in Opposition to Defendant's Motion (doc. 13), Plaintiff argues that workplace harassment/hostile work environment is a sustainable cause of action under Title VII and the ADA, that constructive discharge should be recognized as a state cause of action, that the State Constitution is applicable and that Title VII retaliation is a viable cause of action.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1) Standard

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff has the burden of proving that subject matter jurisdiction exists. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

### B. Rule 12(b)(6) Standard

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded

allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 554-55) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951.

"Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id. at 1951-52.

Applying these principles to the plaintiff's allegation that the defendants had adopted a discriminatory policy permitting "restrictive conditions of confinement" for post-September 11 detainees, the Supreme Court held "the complaint does not show, or even intimate, that petitioners purposefully housed detainees in [restrictive conditions] due to their race, religion or national origin." Iqbal, 129 S. Ct. at 1952. Accordingly, dismissal was appropriate. Id.

### III. DISCUSSION OF CLAIMS

**A. Title VII Retaliation Claim**

"Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir.2002). It is well settled that the scope of Plaintiff's EEOC charge defines the scope of any ensuing lawsuit. Id. (citing Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000)). The Fourth Circuit has held that "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable

investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir.1996). Claims that fall outside of the scope of the EEOC charge are procedurally barred. Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 (4th Cir.1995). This requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible. Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005).

The Court finds the case of Miles v. Dell, Inc., 429 F.3d 480 (4th Cir.2005), to be instructive here. In Miles, the Fourth Circuit upheld the district court's decision to grant summary judgment in favor of the defendant employer, holding that the plaintiff failed to exhaust her administrative remedies. In her EEOC charge, the plaintiff checked the box for sex discrimination and stated that she experienced hostile treatment, but she did not check the box for retaliation and did not mention retaliation in the description of the charge. Id. at 484-85. Her sole allegation was, "I believe that I was discriminated against due to my sex (female) and (pregnancy)." Id. at 492. The court held that neither the defendant employer nor the EEOC would have been put on notice of a retaliation claim because of the deficiencies in the plaintiff's EEOC charge. Id.

In this case, Plaintiff did not raise the issue of Title VII retaliation anywhere in her EEOC charge. She neither checked the box labeled "retaliation," or made any allegations of Title VII retaliatory conduct on the part of CMS in her charge or attached letter. Consequently, the undersigned finds that Plaintiff failed to exhaust her administrative remedies and that her claim of retaliation is procedurally barred. The undersigned respectfully recommends that Defendant's Motion to Dismiss with respect to Plaintiff's Title VII retaliation claim be granted.

### B. Title VII Workplace Harassment

Plaintiff's EEOC charge checked the boxes for religious discrimination and disability discrimination. In support of her allegation of religious discrimination, Plaintiff stated that she was "subjected to disparate treatment" because she is Jewish. Plaintiff's charge cited only one instance of alleged religious discrimination in the form of a statement from Principal Gardner that "I am concerned that you will not fit," which Plaintiff interpreted as "contextual prejudice." All other statements in Plaintiff's EEOC charge related to her disability and alleged harassment because of her disability.

"A plaintiff fails to exhaust his administrative remedies where ... his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir.2005). In Chacko, the plaintiff's case at trial centered around harassment, including national origin epithets directed at him from his co-workers throughout his employment with the defendant. His administrative charges, however, only mentioned specific instances of harassment from supervisors, not co-workers. Chacko, 429 F.3d at 511. In addition, the charge did not allege continuing action. Id. Based on these facts, the Fourth Circuit held that "a reasonable investigation of discrete instances of supervisor misconduct not involving name calling could not be expected to lead to a continuous pattern of nonsupervisory misconduct which did involve name calling." Id. at 512. Because of this deficiency in the plaintiff's EEOC charge, the Court held that the plaintiff failed to exhaust his administrative remedies. Id.

Based on the Fourth Circuit's reasoning in Chacko, the undersigned finds that Plaintiff's

single claim of religious discrimination in her EEOC charge cannot be construed as allegations of broader workplace harassment based on her religion. See Id. at 508-509 ("[T]he allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct."). Plaintiff's failure to allege Title VII workplace harassment in her EEOC charge is a bar to the Title VII workplace harassment claim in her Complaint. The undersigned finds that Plaintiff has failed to exhaust her administrative remedies and that her claim of Title VII workplace harassment is procedurally barred.

Even assuming *arguendo* that this single allegation in her EEOC charge was enough to place CMS or the EEOC on notice that she was charging CMS with workplace harassment based on her religion, the undersigned finds that pursuant to Rule 12(b)(6) Plaintiff fails to state a viable claim. The term "religion" is defined under Title VII as "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). A plaintiff claiming religious harassment under Title VII must allege facts suggesting that she experienced harassment that was "(1) unwelcome, (2) because of religion, (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) imputable to the employer." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 313 (4th Cir.2008).

Title VII "does not set forth 'a general civility code for the American workplace.'" Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006) (internal citations omitted). As the Fourth Circuit has recognized, "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." Sunbelt Rentals, Inc., 521 F.3d at 315. It is insufficient to merely plead facts establishing "callous behavior by [one's] superiors." Id. at 315-16 (quoting Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003)); see Harris v. Forklift Sys., Inc., 510 U.S. 17,

21 (1993) (the " 'mere utterance of an ... epithet which engenders offensive feelings in a employee[ ]' does not sufficiently affect the conditions of employment to implicate Title VII") (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)) (internal citation omitted). Rather, the plaintiff must plead facts showing both that he perceived the harassment to be hostile or abusive, and that the harassment was "sufficiently severe or pervasive" so as to "create[ ] an environment that a reasonable person would find hostile or abusive." Jennings v. Univ. of North Carolina, 482 F.3d 686, 696 (4th Cir.2007) (internal quotations omitted); see Harris, 510 U.S. at 21-22 ("if the victim does not subjectively perceive the environment to be abusive, ... there is no Title VII violation"). Thus, the plaintiff must bring forward facts showing both subjective and objective "severe or pervasive" harassment. Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir.2003) (en banc) (citing Harris, 510 U.S. at 21-22).

Here, Plaintiff's Complaint alleges that she was subjected to workplace harassment "through verbal attacks, physical conduct, threats, disparate treatment, harassment, unfair job demands, unwarranted disciplinary actions, and refusal to address the discrimination." Compl. ¶ 119. Plaintiff fails to allege that any of the offending conduct she experienced was actionable under Title VII on the basis of her religion. In the entirety of Plaintiff's Complaint, she alleges only one incident involving her religion where she questioned Principal Smith about "what was being done regarding an ethnic slur by a student that 'the only good Jew is a dead Jew.'" Compl. at ¶ 60. According to Plaintiff's Complaint, "the student did not receive the appropriate discipline." Id. In her EEOC charge, Plaintiff stated that she believed a remark from Principal Gardner on June 24, 2009 that "Plaintiff will not fit" in at Piedmont Middle School, was "contextual prejudice" motivated by the fact that she is Jewish. Compl., Ex. 1. Plaintiff also alleged that in the context of that same

12

conversation, Principal Gardner expressed concern regarding accommodating her MCS restrictions. Id. In Plaintiff's Complaint, she alleges that Principal Gardner called her a "Yankee" during this meeting and specifically defined the term to mean "a person who does not chit chat and is direct in conversation." Compl. at ¶ 76. However, Plaintiff does not allege in her Complaint that Principal Gardner made any remarks during this meeting that she believed were motivated by her religion. Plaintiff never alleges in her EEOC charge or her Complaint that she ever complained to a supervisor (or any employee of CMS) about experiencing discrimination based on her religion.

The fact that Plaintiff had difficulty getting along with her students, coworkers and supervisors is not evidence of harassment motivated by any animus toward her religion. See Ziskie v. Mineta, 547 F.3d 220, 226 (4th Cir. 2008) ("harassment due to personality conflicts will not suffice."); Sharafeldin v. Maryland Dep't of Pub. Safety and Corr. Servs., 131 F.Supp.2d 730, 737 (D.Md. 2001) ("Title VII does not prohibit 'genuine but innocuous differences' in the ways that persons interact during their employment with each other."(quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)). Similarly, Plaintiffs numerous allegations of verbal and physical harassment do not fall within the reach of Title VII. See Sharafeldin, 131 F.Supp.2d at 739 ("Title VII does not prohibit all verbal or physical harassment in the work place."); McDougal-Wilson v. Goodyear Tire and Rubber Co., 427 F. Supp. 2d 595, 613 (E.D.N.C. 2006) ("Simple teasing, sporadic use of abusive language, offhand comments, jokes related to protected status, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (citing Faragher v. City of Boca Raton, 524 U.S.775, 788 (1998)).

Recent Fourth Circuit decisions finding harassment severe enough to be actionable under

Title VII involved frequent, targeted, and distinctly abusive behavior. See, e.g., Sunbelt Rentals, Inc., 521 F.3d at 316-17 (finding harassment to be severe where coworkers' repeated religious slurs, directed undeniably at Muslim plaintiff, caused the workplace to be "permeated with anti-Muslim hostility"); Jennings, 482 F.3d at 698-99 (finding harassment to be severe where harassing incidents "were part of an abusive pattern that instilled fear and dread"); Ocheltree, 335 F.3d at 329-33 (finding harassment to be severe where the plaintiff was subjected to a "stream" of offensive comments and other offensive behaviors over an extended period of time).

In this case, the undersigned finds that Plaintiff was not subjected to severe and pervasive harassment on the basis of her religion that was both subjectively and objectively offensive. When viewed from an objective standpoint as required by Title VII, it is clear that Plaintiff's dissatisfaction with the discipline of a student who made one offensive comment regarding her religion and the remark by Principal Gardner about the likelihood of Plaintiff "fitting in" are not evidence of severe and pervasive harassment. Because Plaintiff has failed to allege facts sufficient to suggest that her treatment at CMS was so "severe or pervasive" as to "alter the conditions of employment and create an abusive atmosphere," her Complaint is deficient as to her religious harassment claim. See Faragher, 524 U.S. at 788 (approving the "filter[ing] out [of Title VII] complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language"). Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss with respect to Plaintiff's Title VII workplace harassment claim be granted.

**C.   Plaintiff's Claims Under Article 1, §§ 1 and 19 of the North Carolina State Constitution**

Plaintiff's claims for violations of the North Carolina State Constitution are brought under

14

Article 1, §§ 1 and 19. Specifically, Plaintiff alleges that she was denied the fruits of her labor under Art. 1, §1, and that she was denied equal protection of the laws under N.C. Const. Art. 1, § 19. Plaintiff appears to allege that her claim of a "constructive discharge" by Defendant is actionable under N.C.G.S.A. Const. Art. 1, § 1 which protects the right to "earn a livelihood" in North Carolina. See Cline v. McCullen, 148 N.C. App.147, 151, 557 S.E.2d 588, 591 (N.C.App.2001). Plaintiff also cites N.C. Gen. Stat. § 143.22.2 alleging that Defendant wrongly discharged her in violation of public policy.

North Carolina law does not recognize a claim for wrongful discharge where an employee is hired under a contract. Burch v. Philip Morris USA, Inc., 296 F. Supp.2d 646, 650 (M.D.N.C. 2004). "Wrongful discharge arises only in the context of employment at will." Claggett v. Wake Forest Univ., 486 S.E.2d 443, 448 (N.C.App. 1997). The terms of Plaintiff's employment were governed by a contract entered into between her and CMS at the time of hire. "Breach of contract is the proper claim for a wrongfully discharged employee who is employed for a definite term or an employee subject to discharge only for 'just cause.'" Wagoner v. Elkin City Schools' Bd. of Education, 440 S.E.2d 119, 125 (N.C. App. 1994)(citations omitted). Therefore, a wrongful discharge claim is unavailable to Plaintiff.

Additionally, with regard to Plaintiff's constitutional claim under N.C. Const. Art. 1, § 1, "a direct claim under the North Carolina Constitution is available only in the absence of an adequate state remedy." Frye v. Brunswick County Bd. of Educ., 612 F.Supp.2d 694, 704 (E.D.N.C. 2009)(citations omitted). Plaintiff's appropriate remedy would have been to pursue a breach of contract claim under North Carolina law and therefore, a direct claim under the State Constitution is unavailable. Consequently, the undersigned finds that Plaintiff's claims for wrongful or

constructive discharge fail under Rule 12(b)(6).

With regard to Plaintiff's equal protection claim under N.C. Const. Art. 1, § 19, "a party can bring an equal protection claim by alleging it has 'been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Tri-County Paving, Inc. v. Ashe Cty., 281 F.3d 430, (4th Cir. 2002) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). In equal protection analysis, "persons who are in all relevant aspects alike are similarly situated." Frye, 612 F.Supp.2d at 694 (E.D.N.C. 2009) (quotation omitted). Plaintiffs must also plead sufficient facts to demonstrate this "unequal treatment was the result of intentional or purposeful discrimination." Williams v. Hansen, 326 F.3d 569, 576 (4th Cir.2003).

Plaintiff has failed to plead any of these elements. Plaintiff does not allege that she has been treated differently from any similarly situated person. Plaintiff fails to identify who she considers to be similarly situated under an equal protection analysis. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Twombly, 550 U.S. at 556; see also Young v. City of Mount Ranier, 238 F.3d 567, 577 (4th Cir. 2001)(explaining that the "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions."). Plaintiff's vague allegations of "discrimination, harassment and disparate treatment" are completely insufficient to allege an equal protection claim. They are merely conclusory allegations that fail to state a claim upon which relief can be granted.

For the above reasons, the undersigned finds that Plaintiff's State Constitutional claims under Article 1, §§ 1 and 19 should be dismissed for failure to state a claim for which relief may be granted and respectfully recommends that Defendant's Motion to Dismiss with respect to Plaintiff's

State Constitutional claims be granted .

## III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendant CMS's Partial Motion to Dismiss (doc. 10) be **GRANTED** and Plaintiff's Complaint be **DISMISSED WITH PREJUDICE** with regard to all claims against CMS **EXCEPT** Plaintiff's claims for violations of the Americans with Disabilities Act.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED**.

Signed: May 12, 2011

David S. Cayer
United States Magistrate Judge