IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:11-cv-00034-RJC-DSC

| | | |
|---|---|---|
| NADA FELDMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF LAW** |
| vs. | ) | **IN SUPPORT OF DEFENDANT'S** |
| | ) | **MOTION FOR SUMMARY JUDGMENT** |
| CHARLOTTE-MECKLENBURG BOARD | ) | |
| OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

Plaintiff originally attempted to plead a variety of claims relating to her employment with the Charlotte-Mecklenburg Board of Education (also known as the Charlotte-Mecklenburg Schools or "CMS"). Motions practice under Rule 8(b)(6) resulted in the dismissal of most of the Complaint. The only remaining claim is for alleged violations of the Americans with Disabilities Act ("ADA"). Specifically, Plaintiff claims that she suffers from "multiple chemical sensitivity" ("MCS"). However, such claim should be dismissed for several reasons.

Plaintiff alleges, and CMS addresses below, various specific alleged incidents. In reality, however, Plaintiff's laundry-list of isolated complaints is of limited relevance due to multiple barriers to her ADA claim. First, much of Plaintiff's claim is barred because it is untimely or because it exceeds the scope of her EEOC complaint. Second, Plaintiff has presented no diagnosis that she actually suffers from MCS. Third, even if it is assumed Plaintiff could prove that she suffers from MCS, the evidence is undisputed that such supposed condition does not rise to the standard necessary to constitute a "disability" under the ADA.[1] Finally, no reasonable

---

[1] As discussed below, Plaintiff's condition apparently did not affect her ability to go anywhere or do anything, except that she could not work or go near a perfume counter at the mall. In addition, Plaintiff continued to smoke

accommodation was possible for Plaintiff: Plaintiff was a middle school teacher, who by necessity must be exposed to hundreds of students per day; to require that CMS maintain an environment free of fragrances and other objectionable smells is unreasonable as a matter of law.

## STATEMENT OF UNDISPUTED FACTS

**Employment History:** Plaintiff was an employee of CMS from July 2006 to November 2009. Specifically: CMS hired Plaintiff as a teacher in July 2006 at Alexander Middle School ("Alexander"). (Pl. Dep. II, 17-19 & Exs. 20-21). Plaintiff taught language arts and was assigned to a mobile classroom in a mobile classroom village along with all of the other teachers in her grade level. (Smith Aff. ¶ 5). At the end of the school year, Plaintiff's contract was renewed, and she was assigned to Alexander again. However, in Fall 2007, due to under-enrollment, Alexander was required to cut teaching positions. Plaintiff was transferred to Ranson Middle School. (Smith Aff. ¶ 9). Plaintiff transferred back to Alexander on January 22, 2008, where she remained through the end of the 2008/2009 school year. (Smith Aff. ¶10). For the 2009/2010 school year, Plaintiff taught at Bradley Middle School ('Bradley') until her voluntary resignation on November 1, 2009. (Pl. Dep. I, 180-184 & Exs. 16-17).

**Plaintiff's Alleged Disability:** Plaintiff alleges that she was diagnosed with MCS in *1993* by Dr. Tulin-Silver in Michigan. (Pl. Dep. I, 24). Plaintiff produced no medical documents from this alleged diagnosis. Plaintiff contends that she is sensitive to a variety of environmental irritants including mold, perfume, and bleach. (Pl. Dep. II, 157-158 & Ex. 44). However, she also states that MCS has not interfered with her ability to go to public places including restaurants, the grocery store, or airplanes. (Pl. Dep. I, 30; II, 138). In addition, throughout her employment with CMS, Plaintiff smoked cigarettes. (Pl. Dep. II, 147-148).

---

cigarettes throughout the time that she claimed that she could not bear exposure to a variety of smells and substances.

Plaintiff's current physician, Dr. Thomas Lessaris, noted that Plaintiff had MCS but testified that he did not make the diagnosis or do any testing, but rather relied on Plaintiff's self-report. (Lessaris Dep. 18-19). Dr. Lessaris has no experience with diagnosing or treating MCS, and he gathered most of his information about the condition from the Internet. (Lessaris Dep. 24-26). He further acknowledged that whether MCS even exists as a condition is a matter of controversy in the medical community. (Lessaris Dep. 30).

Dr. Lessaris began treating Plaintiff in June 2007, and, at his initial assessment, he noted that Plaintiff was a smoker and had early chronic obstructive pulmonary disease ("COPD") that is typically caused by tobacco abuse and causes "difficulty with breathing, especially forced expiration." (Lessaris Dep. 32-35). Although Plaintiff visited Dr. Lessaris frequently, her medical records contain no mention of MCS until April 2008 when she reported that she had mold in her home and that she was sensitive to chemicals. (Lessaris Dep. 32-68). There are no further mentions of sensitivity in Plaintiff's records until January 26, 2009, when she reported to Dr. Lessaris that she felt she was becoming more sensitive to odors and perfumes. (Lessaris Dep. 96-97). Dr. Lessaris testified MCS is not life-threatening to Plaintiff. (Lessaris Dep. 109).[2]

**Attempt at Reasonable Accommodations:** Plaintiff provided the first documentation of her MCS to CMS in February 2009.[3] Such documentation consisted only of a note from Dr. Lessaris, with no supporting diagnosis, stating that Plaintiff could not be exposed to

---

[2] Plaintiff claims that Dr. Lessaris told her that another exposure to chemicals such as perfume could be life-threatening. (Pl. Dep. I, 164). Dr. Lessaris testified that he neither made such a statement to Plaintiff, nor did he believe it to be true. (Lessaris Dep. 109).

[3] Contrary to her Complaint, in deposition, Plaintiff alleged that she informed Principal Smith of her MCS in the first school year. Plaintiff alleges she made numerous complaints about the air conditioner/heating unit in her mobile unit. In fact, Plaintiff submitted a doctor's note dated March 27, 2007, which stated "patient has allergies and chronic bronchitis and needs to have heating/air vents evaluated for mold in her classroom." (Pl. Dep. I, 24; Pl. Dep. II, 23-24 & Ex. 24). Within 24 hours, Principal Smith notified the school's property manager of the complaint. (Smith Aff. ¶ 7). CMS conducted an investigation for mold in her mobile unit on March 29th and April 4th but found none. (Kasher Aff. Exs. A and B). Furthermore, Plaintiff applied for a CMS assessment program position on March 17, 2008 in which she stated on her application that she required no accommodations to perform the functions of the position. (Pl. Dep. II, 42 & Ex. 28)

"chemicals and perfumes". (Pl. Dep. I, 68-70, 124 & Ex. 3). In response to CMS' request for additional information, a second letter was provided with the name of the condition, but with very little detail.[4] (Pl. Dep. II, 157-158 & Ex. 44). Despite the lack of supporting evidence that Plaintiff suffered from MCS (or any other condition), CMS informed Plaintiff that the school system would attempt to provide accommodations to Plaintiff, stating that:

> In order for CMS to meet any reasonable accommodation request by an employee, please understand it may require an on-going "interactive process" to meet your needs. Therefore, we ask that you appropriately and professionally report any future challenges (if any) within your work environment that may adversely affect your medical condition. Then, authorized CMS administrators will take the appropriate action(s) to correct the matter if the corrective action does not cause an "undue hardship" as defined by the ADA and the *Interpretive Guidance* on Title I to the ADA regulations (29 CFR, Part 1630.9).

(Pl. Dep. I, 122-123 & Ex. 12).

Plaintiff never specified what accommodation she actually wanted other than generally not being exposed to chemicals and perfume, nor has Plaintiff ever explained how she could teach in a large school without being exposed to perfumes and other smells. Even in her deposition, Plaintiff was unable to articulate the specific accommodation she was seeking. In fact, when CMS attempted to accommodate Plaintiff, the effort was rejected: In February 2009, Plaintiff complained that she was bothered by a student in her class who wore perfume. Principal Smith suggested that Plaintiff post a sign in her classroom indicating that she was allergic to perfume so that others would be aware of her sensitivity. (Smith Aff. ¶¶ 11, 12; Pl. Dep. I, 59-60, 100-101 & Ex. 8). Plaintiff, however, *refused to post such a sign, insisting that requesting her to do so was a violation of her ADA rights.* (Pl. Dep. I, 59-60, 100-101 & Ex. 8). Thus, when CMS proposed the most obvious step of asking students not to wear perfume in class, Plaintiff refused.

---

[4] Dr. Lessaris testified that the list of prohibited substances was suggested by Plaintiff. (Lessaris Dep. 21).

Rather than present evidence that she was ever diagnosed with MCS, or that she ever articulated the accommodation that she wanted, Plaintiff has instead focused on a few isolated incidents as evidence of alleged lack of reasonable accommodations. In one incident, a parent contacted the school upset about how Plaintiff treated her daughter after she wore perfume to school. As is typical protocol, a parent-teacher conference was scheduled to resolve the issues. (Smith Aff. ¶ 13; Pl. Dep. I, 59-63). As a precaution in case anyone wore perfume to the meeting, Principal Smith held the meeting in a room with windows so that Plaintiff could sit by an open window if necessary, and the door to the room remained open. Both the parent and student arrived at the conference, supposedly wearing perfume. (Smith Aff. ¶ 13; Pl. Dep. I, 63). Plaintiff stood by an open window; however, she left the meeting early claiming that she could not tolerate the perfume. (Smith Aff. ¶13). Plaintiff claims she had trouble breathing because of the perfume. (Pl. Dep. I, 62-63). The next day, Plaintiff saw Dr. Lessaris. According to his records, Plaintiff reported she had "increased nasal symptoms, dizzy, abdominal pain." Dr. Lessaris observed only nasal congestion. (Lessaris Dep. 101-02). After the conference, CMS removed the student from Plaintiff's classroom. (Smith Aff. ¶ 13; Pl. Dep. I, 61).

Another example involved an incident of inclement weather, when Plaintiff and the other teachers in mobile units were required to hold class inside the school building. Plaintiff complained that her assigned temporary room had mold in the carpet; therefore, Smith allowed her to teach her class in the cafeteria. (Smith Aff. ¶14; Pl. Dep. I, 74, 78-79 & Ex. 5). Plaintiff also complained that her morning duty post was next to a room where bleach was used. Principal Smith allowed her to change assignments to an outside location. Plaintiff now complains that her post outside required her to stand in rain and snow; however, Plaintiff was not

the only teacher assigned to an outside duty post. (Pl. Dep. I, 133-34). In fact, numerous teachers have a duty location outside. (Smith Aff. ¶ 18).

Another incident occurred in Plaintiff's early weeks at Bradley. A custodian used bleach to clean the bathroom next to Plaintiff's classroom after school on September 8, 2009.[5] (Pl Dep. I, 156). Normally, Plaintiff would not be at school after the custodians cleaned, however, Plaintiff returned to school to attend parent/teacher night. (Pl. Dep. I, 153-54, 156-57). Plaintiff alleges she smelled the bleach and that her eyes became watery and red, she had trouble breathing, was coughing and gagging, and felt nauseous and sick. (Pl. Dep. I, 159). However, according to Plaintiff, she did not leave school early, seek medical treatment, or even complain at that time. (Pl. Dep. I, 157-58) Principal Barnhill understood that CMS did not use bleach; however, unbeknownst to him, the custodian purchased and used the bleach on her own. (Barnhill Dep. 13, 16) After this incident, Principal Barnhill instructed the custodian staff not to use any bleach. (Barnhill Dep. 16)

In another instance, Plaintiff alleged that Mr. Etheridge, assistant principal, came to her classroom and asked her to open the door. Plaintiff told Mr. Etheridge that she smelled perfume, but Mr. Etheridge denied smelling any perfume. (Etheridge Aff. ¶ 10; Pl. Dep. I, 160-63, 169 & Ex. 13). After the door opened, Plaintiff alleges that she started "gagging and coughing and choking and dry heaving." (Pl. Dep. I, 162-63). Mr. Barnhill encountered Plaintiff in the hallway, and although he did not notice Plaintiff having any issues breathing, he offered to call for medical assistance; however, Plaintiff refused. (Barnhill Dep. 17). Plaintiff left school and drove to her doctor's office. (Pl. Dep. I, 163). Dr. Lessaris reported Plaintiff had "mild

---

[5] Prior to the start of the school year, Plaintiff informed the Principal, Howard Barnhill, of her MCS, and they discussed her need to avoid bleach. Plaintiff did not request any other accommodations. (Pl. Dep. I, 152-54). At that time, Mr. Barnhill understood that CMS did not use bleach to clean; therefore, he did not anticipate any issues with exposure to bleach. (Barnhill Dep. 13).

wheezing," "red eyes," and "congestion," which he treated with rest and a recommendation to take the inhalers and nasal sprays that she had previously been prescribed for other conditions. (Lessaris Dep. 108-09). Plaintiff never returned to school. (Pl. Dep. I, 166). Shortly thereafter, Plaintiff voluntarily resigned. (Dacus Aff. ¶16-17; Pl. Dep. I, 181 & Exs. 16-17).

In short, despite Plaintiff never explaining what accommodation she sought, CMS always responded to her complaints and provided accommodations. Ultimately the problems were that Plaintiff never articulated what she wanted and that, to the extent that Plaintiff secretly wanted CMS to provide a perfume-free environment at a large middle school, such accommodation would have been unreasonable, if not impossible.

<u>**ARGUMENT**</u>

## I.   LEGAL STANDARD

To survive a summary judgment motion, Plaintiff must produce evidence that creates an issue of material fact on an element essential to her case and on which she will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A plaintiff "may not rest upon mere allegations or denials," but rather must conclusively demonstrate that a triable issue of material fact exists. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994), *cert. denied*, 513 U.S. 813 (1994).

## II.   MUCH OF PLAINTIFF'S CLAIM IS BARRED AS UNTIMELY

Claimants under the ADA must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged discriminatory practice. 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(e)(1). "When the plaintiff fails to file such a complaint in a timely fashion with the EEOC, the claim is time-barred in federal court. This filing requirement acts as a 180-day statute of limitations . . . ." *McCullough v. Branch Banking*

& *Trust Co.*, 35 F.3d 127, 131 (4th Cir. 1994) (citations omitted). The United States Supreme Court has said that, with respect to allegations of a "discrete discriminatory act," the 180-day clock begins to run on the day the act "occurred." *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Each alleged denial of a reasonable accommodation is a discrete act that triggers the statute of limitations. *Taylor v. Federal Express Corp.*, No. RDB-03-195, 2004 WL 5231978, at *9 (D. Md. July 28, 2004). If the claimant fails to file a discrimination charge in a timely fashion with the EEOC, "the claim is time-barred in federal court." *Id.* at 131. Plaintiff filed her Charge at the earliest on December 2, 2009[6] (Pl. Dep. II, 154-155 & Ex. 42), which means to be timely, any alleged discriminatory practice must have occurred on or after June 5, 2009. Therefore, allegations prior to June 5, 2009 should be dismissed.[7]

## III. PLAINTIFF IS NOT A QUALIFIED INDIVIDUAL WITH A DISABILITY

The Americans With Disabilities Act[8] prohibits employers from discriminating against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The ADA defines a

---

[6] The EEOC Charge was signed on December 10, 2009 and file stamped received by EEOC on December 14, 2009; however, the Charge states "original charge filed December 2, 2009." (Pl. Dep. II, 154-155 & Ex. 42). Taking the facts in the light most favorable to Plaintiff, CMS assumes for purposes of this argument that the filing date was December 2, 2009.

[7] In her EEOC Charge, Plaintiff alleged the earliest date discrimination took place was August 1, 2008 (Pl. Dep. II, 42-43). Nothing in Plaintiff's EEOC Charge indicated she intended to pursue earlier instances of alleged discrimination by CMS. Plaintiff's list of alleged failures to accommodate prior to August 1, 2008 would not have been developed by a reasonable investigation of her original complaint and therefore exceed the scope of her EEOC charge and should be stricken. *See Tillbery v. Kent Island Yacht Club, Inc.*, No. CCB-09-2956, 2010 WL 2292499, at *6 (D. Md. June 4, 2010) (internal quotation omitted) ("Requirement that a claimant inform the EEOC of the date(s) of the alleged discriminatory activity is not merely a technicality. Rather, such information notifies the agency of the scope of its investigation, and ultimately, the scope of a plaintiff's right to file a federal lawsuit is determined by the [EEOC] charge's contents.")

[8] In 2008, Congress revised the ADA and passed the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), which became effective January 1, 2009. *See Feldman v. Law Enforcement Assoc. Corp.*, 779 F.Supp.2d 472, 482, *citing* Pub. L. No. 110-325, 122 Stat. 3553 (2008). The ADAAA relaxed the standards required to establish a disability. 29 C.F.R. § 1630.1(c)(4). The ADAAA became effective on January 1, 2009; however, it does not apply retroactively. *Cochran v. Holder*, 436 Fed. Appx. 227, 231, 2011 WL 2451724, at *4 (4th Cir. 2011) (citation omitted). Since Plaintiff's claims in this lawsuit span both applicable time periods covered by the ADA (pre-January 1, 2009) and the ADAAA (post-January 1, 2009), her failure to qualify as disabled under either version of the statute is addressed.

"qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA defines the term "disability" with respect to an individual as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "[W]hether a plaintiff is disabled is a question of law for a court." *Lochridge v. City of Winston-Salem*, 388 F.Supp.2d 618, 626 (M.D.N.C. 2005) (internal citations omitted). Here, Plaintiff alleged that she is disabled under the first prong of the disability definition (Compl. ¶ 94); however, Plaintiff is unable to establish that she has a disability or that she is a qualified individual.

A. **Plaintiff Cannot Establish That She Had A Disability Under the ADA (Pre-Amendment)**

To establish disability under the actual disability prong of the ADA, Plaintiff must show: "(1) a physical or mental impairment, (2) that substantially limits, (3) one or more major life activities." *Washington v. George V. Sharp, Inc*. 124 F.Supp.2d 948, 956 (E.D. Va. 2000) (internal citations omitted). A physical impairment includes "any physiological disorder, or condition, affecting one or more of the following body systems . . . respiratory." 29 C.F.R. § 1630.2(h). In order to be "substantially limiting," an impairment must "prevent[ ] or severely restrict[ ] the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 198 (2002).[9] Minor impairments are excluded from coverage. *Id.* at 197. Plaintiff failed to establish either that she is impaired or that her alleged impairment is substantially limiting.

---

[9] This case has been overruled by the amendments to the ADA. *See* ADA Amendments Act of 2008, Pub.L. 110-325, 122 Stat. 3553 (2008). As noted above, however, the amendments did not take effect until January 1, 2009.

1.     Plaintiff Failed To Establish That She Has An Impairment.

Plaintiff failed to provide medical documentation or testimony to establish a disability. The necessity to provide medical evidence to establish a disability "turns on the extent to which the alleged impairment is within the comprehension of a jury that does not possess a command of medical or otherwise scientific knowledge." *Marinelli v. City of Erie, Pa.* 216 F.3d 354, 360 (3d Cir. 2000). Other courts have followed this standard in their disability analysis. *See Gallimore v. Newman Machine Co., Inc.,* 301 F.Supp.2d 431 (M.D.N.C. 2004) (using *Marinelli* medical evidence standard in disability analysis). Impairments that are not readily amenable to comprehension by a lay jury require medical evidence beyond a plaintiff's self-serving statements. *Brandon v. Klingensmith Healthcare, Inc.*, No. Civ.A. 03-1963, 2005 WL 3434141, at *5 (W.D.Pa., Dec. 13, 2005) (holding alleged impairments of fibromyalgia and endometriosis did "not fall within an untrained juror's general experience or understanding" and required medical evidence); *Ashton v. AT&T Corp.*, No. Civ.A.03-CV3158(DMC), 2005 WL 2320899, at *5 (D.N.J. Sept. 22, 2005) (holding alleged impairments of anxiety, stress disorder, and agoraphobia were not readily apparent and required medical evidence).

Plaintiff claims to suffer from MCS, which supposedly causes sensitivity to fragrances, chemicals, and mold, but she has provided no evidence, other than her own self-serving statements, that she actually has MCS. Plaintiff alleges, without proof, that she was diagnosed with MCS in 1993 by Dr. Tulin-Silver in Michigan. (Pl. Dep. I, 24). Her current physician, Dr. Lessaris, who acknowledges that MCS is "somewhat controversial," testified that he relied on Plaintiff's self-report of the diagnosis and that he had never done any independent analysis or testing regarding Plaintiff's alleged MCS. (Lessaris Dep. 18-19). In fact, Dr. Lessaris'

knowledge of MCS comes largely from research he has done on the Internet for this case. (Lessaris Dep. 24-26).

MCS is a controversial diagnosis that does not have general acceptance in the medical community. *See Comber v. Prologue, Inc.,* No. CIV.JFM-99-2637, 2000 WL 1481300, at *4 (D.Md. Sept. 28, 2000) (holding evidence of MCS inadmissible where plaintiff's physician acknowledged non-existence of test to confirm it and that "the medical community does not generally accept it as a diagnosis") Like the *Ashton* court's analysis of anxiety and agoraphobia under the *Marinelli* framework, MCS is not an impairment that would be within the comprehension of a jury without medical or scientific knowledge. *Ashton,* 2005 WL 2320899, at *4-5. "The average [juror] cannot be expected to know all of the elements and difficulties associated with [p]laintiff's alleged disabilities." *Id.* at *5. Plaintiff's failure to provide evidence that she has an impairment is fatal to her claim that she is disabled under the ADA.[10]

2.     <u>Plaintiff Is Not Substantially Limited in a Major Life Activity.</u>

Plaintiff alleges that her MCS affects her ability to breathe. (Compl. ¶ 94). Breathing qualifies as a major life activity. *See* 29 C.F.R. § 1630.2(i)(i). Even if Plaintiff could establish that MCS is a physical impairment that affects her ability to breathe, she must still establish that her MCS *substantially limits* her ability to breathe. To determine whether Plaintiff is substantially limited in the major life activity of breathing, courts consider the following factors: "(i) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long term impact resulting from the impairment." *Chan v. Sprint Corp.*, 351 F.Supp.2d 1197, 1204 (D. Kan. 2005) (internal citation omitted). 29 C.F.R. § 1630.2(j)(2). "The ADA only protects people whose impairments are so severe that they

---

[10] Evidence from a professional trained to diagnose MCS is especially important given the difficulty that a jury will have in understanding how Plaintiff is unable to teach but can smoke cigarettes and otherwise be unaffected in her daily activities.

'significantly restrict[ ]' a person's ability to perform major life activities when compared to the abilities of the 'average person in the general population.'" *Papproth v. E.I. DuPont de Nemours and Co.,* 359 F.Supp.2d 525, 529 (W.D.Va. 2005) citing 29 C.F.R. § 1630.2(j)(ii). "A condition that simply affects or compromises an individual's ability to perform major life activities is insufficient to establish a disability." *Id.*

Plaintiff claims to experience trouble breathing, nausea, watery eyes, coughing, and gagging when exposed to substances such as mold, perfume, and bleach while working for CMS. (Pl. Dep. I, 62-63, 81, 93, 159, 162-63). Plaintiff says that the duration and severity of her symptoms depend on the substance and length of exposure (Pl. Dep. I, 37- 41), but the only time she left school to seek medical treatment after any of the alleged CMS exposures was on September 9, 2009, her last day of work. (Pl. Dep. I, 163). Upon examination for the September 9, 2009 "incident," Plaintiff's physician testified that she only had "mild wheezing," "red eyes," and "congestion" and that her condition was not life threatening. (Lessaris Dep. 108-09). Dr. Lessaris sent Plaintiff home and instructed her to use the inhalers he had already prescribed to her for other conditions. (Lessaris Dep. 109).

At best, Plaintiff only experienced temporary difficulty breathing when subjected to irritants (and then apparently only at work). Otherwise, Plaintiff is not restricted in any activities and is able to go out in public places with no issues. (Pl. Dep. I, 30-31; II, 138). Plaintiff's mild and temporary symptoms do not rise to the level of a substantial impairment. *See Mayers v. Washington Adventist Hosp.*, 131 F. Supp. 2d 743 (D. Md. 2001), *aff'd,* 22 Fed. Appx. 158, 2001 WL 146431 (4th Cir. 2001)(holding an asthmatic plaintiff was not substantially limited in her ability to breathe because she "only experienced temporary difficulty in breathing when subject to the extreme environmental conditions allegedly found in her former workplace or seasonal

changes."); *Chan*, 351 F.Supp.2d at 1203-1206 (holding plaintiff with alleged sensitivity to chemicals who claimed she experienced trouble breathing, burning and itching in her eyes, and coughing when exposed to cigarette smoke, some fragrances, and mold was not substantially limited in the major life activity of breathing).

**B.** **Plaintiff Cannot Establish She Has A Disability Under the ADAAA**

While Congress explicitly stated in the ADAAA that "the definition of disability . . . shall be construed in favor of broad coverage of individuals," 42 U.S.C.A. § 12102(4)(A), nothing in the ADAAA changed the fact that a plaintiff must still come forward with sufficient evidence of an impairment, including "(1) a physical or mental impairment, (2) that substantially limits, (3) one or more major life activities." *Washington*, 124 F.Supp.2d at 956. Even under the broadened standards of the ADAAA, Plaintiff has failed to establish either that she is impaired or that her alleged impairment is substantially limiting.

1.    Plaintiff Failed To Establish She Has An Impairment Under The ADAAA.

For the reasons stated in section A1, Plaintiff fails to establish an impairment under the ADAAA as well. The ADAAA does not lessen the necessity that a plaintiff must present medical evidence beyond personal self-serving statements to corroborate alleged impairments not "within the comprehension of a jury that does not possess a command of medical or otherwise scientific knowledge." *See Marinelli*, 216 F.3d at 361.

2.    Plaintiff Is Not Substantially Limited in A Major Life Activity.

Under the ADAAA, the "substantially limits" analysis does not require an impairment to "prevent, or significantly or severely restrict" performance of a major activity. 29 C.F.R. § 1630.2(j)(1)(ii). However, even under the broadened standards of the ADAAA, Plaintiff must show she is more than "nominally restricted in performing [a] major life activity." *Noriega-*

*Quijano v. Potter,* No. 5:07-cv-204-FL, 2009 WL 6690943 (E.D.N.C. Mar. 31, 2009) (holding plaintiff was not disabled under the ADA or ADAAA where restrictions did not "rise to the level of a substantial limitation on a major life activity"). "[N]othing in the ADAAA . . . suggests that Congress intended to allow anyone, with an impairment of any kind, to qualify as disabled." *Hill v. Verizon Maryland, Inc.,* No. RDB-07-3123, 2009 WL 2060088, at n.9 (D. Md. July 13, 2009). Moreover, Congress left the standard as "*substantially* limits," denoting a threshold plaintiffs must meet. *See* ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat 3553 (2008).

Given the substantial threshold plaintiffs must still meet under the ADAAA, it is thus unsurprising that courts have dismissed minor impairments as not qualifying under the ADAAA. *See e.g.*, *Curley v. City of North Las Vegas,* No. 2:09–CV–01071, 2012 WL 1439060, at *3 (D. Nev. April 25, 2012) (holding that a minor hearing impairment did not qualify as a disability under the ADAAA). Here, for these reasons and those stated above in section A2, Plaintiff is only nominally restricted and cannot establish that she is disabled under the ADAAA.

### C.     <u>Plaintiff Cannot Establish That She Is "Qualified"</u>

Even if Plaintiff presented evidence that she has a disability that affects a major life activity, she must also demonstrate that she is "qualified" in order to survive summary judgment. To do so, Plaintiff must present evidence that she is able to perform the "essential functions" of the position with or without reasonable accommodation. 42 U.S.C. § 12111(8).

As a teacher, the essential functions of Plaintiff's position required her physical presence in the classroom and regular interaction with staff and other students. (Smith Aff. ¶ 4). The written job description created by CMS for Plaintiff's position lists, among other things, as essential functions: (1) meets and instructs assigned classes in the locations and at the times designated; and (2) takes all necessary and reasonable precautions to protect students. (Pl. Dep

Ex. 4). Plaintiff would be exposed to hundreds of students on a daily basis, including those in her classroom and others in the hallways, cafeteria, and other common areas. (Smith Aff. ¶ 17). Plaintiff has the burden of identifying "an accommodation that would allow a qualified individual to perform the job, as well as the ultimate burden of persuasion with respect to demonstrating that such accommodation is reasonable." *Shin v. Univ. of Md. Med. Sys.*, No. 09-1126, 369 Fed. Appx. 472, 481, 2010 WL 850176, at *7 (4th Cir. 2010) (internal citation omitted).

The reasonableness inquiry is critical because it defines the employer's obligation to provide accommodations when requested by a disabled employee. *See Schneider v. Giant of Md., LLC,* 389 Fed. Appx. 263, 271, 2010 WL 2996965 at *7 (4th Cir. 2010) ("The ADA does not require that the employer go out of his way to provide an accommodation for a disabled employee, but only requires that accommodations are reasonable."). An accommodation is unreasonable if it "either imposes undue financial or administrative burdens, or requires a fundamental alteration in the nature of the program." *Buckles v. First Data Res., Inc.*, 176 F.3d 1098, 1101 (8th Cir. 1999).

Here, Plaintiff has failed to meet her burden of identifying a reasonable accommodation which would have allowed her to perform the essential functions of her job. While Plaintiff failed to ever articulate the accommodation that she sought, her "disability" was her inability to be exposed to perfumes and other smells and chemicals. The solution would be to render at least her classroom, all of her students, and all common areas scent- and chemical-free. This is plainly unreasonable, if not impossible. To make matters worse, when Plaintiff's principal suggested a sign alerting students to Plaintiff's aversion to perfume, Plaintiff objected that such information was a violation of her rights. (Pl. Dep. I, 59-60; II, 94). Therefore, the

accommodation would require that Plaintiff's classroom, Plaintiff's students, and all common areas must be perfume-free, without telling any student why.

Such accommodation also begs the question as to what would happen if one student wore perfume or other scented products.[11] Would the student be sent home, or to the principal's office? Would Plaintiff be allowed to leave for the day? And what would happen if Plaintiff detected an objectionable scent in a cafeteria or hallway containing hundreds of students?

Plaintiff simply could not be accommodated, given the nature of her job. The inability to perform her basic job functions prevents her from proceeding with a claim under the ADA. *Gits v. Minn. Mining & Mfg. Co.,* No. 99-1925 ADM/AJB, 2001 WL 1409961, at *8 (D. Minn. June 15, 2001) (internal citation omitted) (finding employer "not required to delegate essential functions of the position to other individuals in order to accommodate.") *See also Buckles,* 176 F.3d at 1101 (holding employer not required "to create a wholly isolated work space for an employee that is free from numerous possible irritants"); *Kaufman v. GMAC Mortgage Corp.,* No. 04-cv-5671, 2006 WL 1371185, at *13 (E.D. Pa. 2006) (holding plaintiff's demand of a "scent-free environment policed by supervisors" would impose undue financial and administrative burdens and be virtually impossible). Plaintiff failed to prove that she presented CMS with a reasonable accommodation that would enable her to perform the essential functions of her job and is thus not a qualified individual under the ADA.

## IV. CMS DID NOT REFUSE TO MAKE A REASONABLE ACCOMMODATION

To succeed on a claim for failure to accommodate, Plaintiff must prove that she filed a timely charge with the EEOC and (1) that she was an individual who had a disability within the meaning of the statute; (2) that CMS had notice of her disability; (3) that she could perform the

---

[11] Plaintiff's issues extend to other scented body products, such as deodorant, cologne, and hand lotion. (Pl. Dep. I, 21, 23, 40).

essential functions of the position with reasonable accommodation; and (4) that CMS refused to make such accommodations. *Rhoads v. Fed. Deposit Ins. Corp.,* 257 F.3d 373, 387 n.11 (4th Cir. 2001). As discussed above, Plaintiff is not an individual with a disability, nor has she met her burden of identifying a reasonable accommodation that would have allowed her to perform the essential functions of the position.

The issue of whether Plaintiff was "qualified" is similar to the question of whether CMS failed to reasonably accommodate Plaintiff. The ADA does not require an employer to provide the "best accommodation possible" or to accommodate an employee in exactly the way requested. *Eckles v. Consolidated Rail Corp.,* 890 F. Supp. 1391, 1399 (S.D. Ind. 1995). Thus, Plaintiff was "not entitled to the accommodation of her choice, but only to a <u>reasonable</u> accommodation." *Whillock v. Delta Air Lines, Inc.,* 926 F. Supp. 1555, 1565 (M.D. Ga. 1995) (emphasis in original). As described above, CMS responded to each of Plaintiff's complaints. However, the broader issue was how to avoid situations in which Plaintiff might be exposed to perfumes and other objectionable materials. As described above, such an accommodation was not reasonably possible, and was probably not possible under any circumstances.

Vague requests or failing to identify any accommodation are insufficient to trigger a duty to accommodate. In *Crawford v. Union Carbide Corp.,* the Fourth Circuit held that vague comments not communicating a specific request for accommodation are insufficient. 202 F.3d 257, 1999 WL 1142346 (4th Cir. 1999). The plaintiff in *Crawford* alleged her employer failed to accommodate her asthma. The Court found that the doctor's letter stating a need "to be in an environment that is essentially free of air pollutants" did not amount to an accommodation request because "it did not mention . . . any worksite . . . nor did it identify any mechanism, such as an air filter, that would be necessary to assure a dust-free environment." *Id.* at *6. Here,

Plaintiff's equally vague request "not to be exposed" to chemicals fails to identify any particular location or mechanism for accommodation and thus fails to amount to a request for accommodation within the meaning of the ADA.

Courts have recognized that maintenance of a fragrance-free environment is not a reasonable accommodation if the job at issue requires interacting with other people.[12] For example, in *Whillock*, the court rejected the plaintiff's requested accommodation to be able to work from home to avoid scents in the workplace because her job as a sales agent required interaction with supervisors. 926 F. Supp. at 1564. In *Kaufmann*, the plaintiff claimed that her employer failed to accommodate her allergy to perfume by taking insufficient steps to eliminate her exposure from colleagues in the workplace. 2006 WL 1371185, at *12-13. The court held that the plaintiff's "demand of a completely scent-free environment to be policed by her supervisors and enforced with disciplinary punishments was 'virtually impossible' to accommodate." *Id.* What Plaintiff sought was not possible, and Plaintiff accordingly cannot pursue a claim under the ADA.

## IV. PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM FAILS AS A MATTER OF LAW UNDER THE ADA

Plaintiff's Complaint alleges one cause of action under the ADA titled "Violation of American Disabilities Act." (Compl. ¶¶ 92-103). Plaintiff's factual allegations regarding her alleged disability center on CMS' alleged failure to accommodate her medical condition. (Compl. ¶¶ 68, 71, 80, 81, 84). Plaintiff now appears to be attempting to assert a claim for workplace harassment based on her alleged disability. Plaintiff fails to state a claim for hostile

---

[12] Interestingly, Ms. Feldman also taught on-line for University of Phoenix. (Pl. Dep. I, 15-16). Such employment allowed Plaintiff to work from home in a controlled environment, which is simply not possible in a public middle school.

work environment under the ADA because she failed to exhaust her administrative remedies, and she cannot make out the prima facie case.

A.  **Plaintiff's Claim for Hostile Work Environment Exceeds the Scope of Her EEOC Charge**

Plaintiff was required to exhaust her administrative remedies as a prerequisite to bringing suit in federal court.  *Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 148 (4th Cir. 1999). Plaintiff's EEOC Charge gave no indication that Plaintiff intended to allege that she experienced a hostile work environment on the basis of her disability.  Plaintiff's failure to include any allegation of disability based workplace harassment bars to her claim because she has not exhausted her administrative remedies.[13]  *See Brodrick v. Napolitano,* No. 3:09-CV-450-FDW-DSC, 2010 WL 3397461, at *3 (W.D.N.C. 2010) (citations omitted) ("the pleaded claim must be mentioned or alluded to in the original [EEOC] charge itself to be considered stated in the original charge").

B.  **Plaintiff Fails to State a Claim for Workplace Harassment Under the ADA**

To prove a hostile work environment claim, Plaintiff must show that (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) liability is imputable on some factual basis to the employer. *Fox v. General Motors Corp.,* 247 F.3d 169, 177 (4th Cir. 2006).[14]  For the reasons stated above, Plaintiff's hostile work environment claim fails because she cannot establish she was a qualified individual with a disability.  Nor can she prove the alleged

---

[13] Further, as argued above in Section IIIA, all of the allegations of incidents that occurred prior to June 5, 2009 are outside the 180-day statutory period required by the ADA.  They do not satisfy the criteria to qualify for the continuing violation exception and should therefore be dismissed as untimely.

[14] *Fox*, 247 F.3d at 176 ("courts have routinely used Title VII precedent in ADA cases").

harassment was based on a disability or that the conduct complained of was sufficiently severe or pervasive so as to alter a term, condition, or privilege of her employment.

Plaintiff's hostile work environment claim fails because there is absolutely no evidence she was harassed *because of a disability. See Mason v. Wyeth, Inc.*, 183 Fed. Appx. 353, 362, 2006 WL 1526601, at *7 (4th Cir. 2006) (granting summary judgment for employer on ADA hostile work environment claim where plaintiff produced no evidence he was harassed because of a disability.). At her deposition, Plaintiff offered only conclusory statements, not evidence of any connection between harassment and an alleged disability. (Pl. Dep. II, 88-97) When asked what incidents she believed were harassment based on her disability or request for accommodations, Plaintiff responded "all the people who are aware of my ADA accommodations and refused to give me those accommodations after they were granted by them, that's a form of harassment." (Pl. Dep. II, 97) Plaitiff also alleges that Mr. Etheridge harassed her by yelling at her in the cafeteria and allegedly shoving Plaintiff. (Pl. Dep. II, 103-108). When asked how she knew these incidents were related to her disability, Plaintiff offered vague conclusory statements including "I think everything Mr. Etheridge did towards me was related to my disability," and "because since he was aware of my disability." (Pl. Dep. II, 104-105). Plaintiff's subjective beliefs alone do not amount to evidence. *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988).

Plaintiff's claim also fails because she cannot point to evidence of harassment sufficiently severe or pervasive so as to alter a term, condition, or privilege of employment. Plaintiff claims that every alleged failure to accommodate created a hostile work environment. (Pl. Dep. II, 88-97) As addressed above, CMS did not fail to accommodate Plaintiff. Further, her complaints of isolated incidents of exposure to perfume and bleach are not severe or pervasive. Plaintiff only

sought medical treatment once after an alleged exposure, and her doctor found only mild wheezing. *See generally Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993) (environment must be reasonably perceived as hostile or abusive based on all circumstances, including frequency of the discriminatory conduct, whether it is physically threatening and humiliating, and whether it unreasonably interferes with an employee's work performance).

Plaintiff's allegations of isolated harassment by Mr. Etheridge also fail. *See Munday v. Waste Mgmt. of North America, Inc.,* 126 F.3d 239, 243 (4th Cir. 1997) (no adverse action when supervisor yelled at plaintiff during a meeting; emphasizing the law does not entitle an employee to a "work environment free of stress"); *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (internal citation omitted) (holding that offhand comments or isolated incidents, unless extremely serious, "will not amount to discriminatory changes in the terms and conditions of employment"); *Hensman v. City of Riverview,* 316 Fed. Appx. 412, 417, 2009 WL 605339 (6th Cir. 2009) (holding multiple but infrequent incidents of inappropriate physical contact did not rise to level of a hostile work environment). Further, the intolerability of working conditions is assessed "by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Munday*, 126 F.3d at 244 (internal citations omitted). Plaintiff's claims that she was subjected to a hostile work environment are objectively *unreasonable* and should be dismissed.

## V.     PLAINTIFF'S CONSTRUCTIVE DISCHARGE CLAIM FAILS

Plaintiff voluntarily submitted her resignation to CMS, effective November 1, 2009. (Pl. Dep. I, 180-182 & Exs. 16-17). Plaintiff now claims that she was constructively discharged on the basis of her disability. (Pl. Dep. II, 87-88 & Ex. 40). To survive summary judgment on this claim, Plaintiff must prove that CMS deliberately intended to force her to quit her job by making

her working conditions intolerable. *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249 (4th Cir. 2006). "An employer's actions are deliberate only if they were intended by the employer as an effort to force the plaintiff to quit." *Id.* at 262 (internal citations omitted). To prove the intolerability prong, the working conditions must be viewed from "the objective perspective of a reasonable person." *Id.* Plaintiff has no evidence that CMS intended to force her to quit.

In support of her constructive discharge claim, Plaintiff alleges that her ADA accommodations were "illegally compromised" at both Alexander and Bradley Middle Schools. (Pl. Dep. II, 87-88 & Ex. 40). Plaintiff alleges she was "exposed on purpose over and over again, especially in September [2009]—to chemicals of which CMS knew I couldn't tolerate." (Pl. Dep. II, 88). As discussed above, Plaintiff first advised Alexander Principal, Joanna Smith, of her MCS in February 2009. (Compl. ¶ 58; Smith Aff. ¶ 11). This prompted a series of interactions with CMS Employee Relations Specialist, Dosha Dacus, which resulted in the approval of Plaintiff's request for reasonable accommodation in March 2009. (Pl. Dep. I, 71-73, 122-123 & Ex. 12; Dacus Aff. ¶ 6). In a letter dated March 13, 2009, Ms. Dacus informed Plaintiff that meeting her reasonable accommodation request "may require an on-going 'interactive process' . . . Therefore, we ask that you appropriately and professionally report any future challenges (if any) within your work environment that may adversely affect your medical condition." (Pl. Dep. I, 122-123 & Ex. 12). Plaintiff reported no disability-related issues to Employee Relations for the remainder of the 2008/2009 school year. (Dacus Aff. ¶ 9).

During the 2009/2010 school year, Plaintiff acknowledges that she had no disability-related issues for the first couple of weeks of school at Bradley. (Pl. Dep. I, 155-157). She was satisfied with her classroom. *Id.* On September 8, 2009, Plaintiff smelled bleach when a custodian cleaned the restroom next to her classroom. The custodian purchased the bleach on

her own, unbeknownst to Principal Barnhill.  (Barnhill Dep. 16).  Plaintiff does not allege that the custodian was aware of her disability or that she intentionally cleaned the restroom with bleach to harm Plaintiff.  Upon hearing of Plaintiff's exposure, Principal Barnhill immediately verbally instructed the custodial staff not to use bleach in the building, and several days later, sent an email with the same instruction.  (Barnhill Dep. 16, 29-30 & Ex. 6).  Mr. Barnhill testified that he did not instruct the custodian staff earlier because he understood that CMS did not use bleach.  (Barnhill Dep. 13).  The following day, Plaintiff alleges that she smelled perfume from the hall outside her classroom when Assistant Principal Etheridge forced her to open her classroom door.  (Pl. Dep. I, 160-161).  Neither Mr. Etheridge nor Mr. Barnhill smelled perfume.  (Barnhill Dep. 17-19, & Ex. 1; Etheridge Aff. 10 & Ex. A).  Plaintiff left the school to seek medical treatment for symptoms her doctor described as "mild wheezing," "red eyes," and "congestion."  (Lessaris Dep. 108).  Plaintiff's doctor wrote her a note to excuse her from school until September 21, 2009.  (Pl. Dep. II, 71-72 & Ex. 32).

The next day, Plaintiff sent Ms. Dacus the first of several emails alleging that her ADA accommodations had been violated.  (Pl. Dep. I, 168, 171, 174-75 & Exs. 13-15).  Ms. Dacus reminded Plaintiff that her reasonable accommodation request was an "on-going interactive process between employer and employee" and tried to assure Plaintiff that CMS would continue to work "to address [Plaintiff's] ADA concerns."  (Pl. Dep. I, 174-175 & Ex. 15; Dacus Aff. 7).  Despite Ms. Dacus' attempts to work with Plaintiff, Plaintiff chose to resign.  (Pl. Dep. I, 180-181 & Ex. 16).

CMS' ongoing attempts to accommodate Plaintiff before her resignation demonstrate that CMS did not make a deliberate effort to force Plaintiff to quit; there is no evidence of any effort on CMS' part to force Plaintiff's resignation.  *See Johnson v. Shalala*, 991 F.2d 126 (4th Cir.

1993)[15] (holding plaintiff could not show deliberate intent to discharge "when there has been an attempt to accommodate that same employee."); *Crumel v. Hampton Univ.*, No. Civ.A.4:05CV31, 2005 WL 3357315, at *11 (E.D. Va. Dec. 8, 2005) (internal citations omitted) (rejecting constructive discharge claim and holding "if an employer in good faith attempts to accommodate a disabled employee, but fails to sufficiently meet the employee's requested needs, then an employee cannot show constructive discharge absent direct evidence that an employer intended to force the employee" to quit.)

Furthermore, a reasonable person in Plaintiff's position would not have conditioned a resignation on a guarantee that she would not be exposed to chemicals such as perfume in a school with hundreds of students and staff, many of whom were unaware of her condition. *See Rankin v. Greater Media, Inc.,* 28 F.Supp.2d 331, 341 (D.Md. 1997) ("the law does not allow an employee's subjective perceptions of what she thinks her employer is doing or might do govern a claim of constructive discharge")  Plaintiff's refusal to engage in the interactive process, despite CMS' numerous attempts to demonstrate a sincere commitment to her safe return to work dictates that her claim for constructive discharge should be denied.

## CONCLUSION

For the reasons stated above, Plaintiff's claims fail as a matter of law; therefore, CMS respectfully requests the Court grant its motion and enter summary judgment in its favor on all of Plaintiff's claims.

---

[15] This case was decided under the Rehabilitation Act.  "The ADA and Rehabilitation Act generally are construed to impose the same requirements due to the similarity of the language of the two acts."  *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468 (4th Cir.1999).

Respectfully submitted, this the 31st day of May, 2012.

/s/Patricia W. Goodson
Patricia W. Goodson, Esq.
North Carolina State Bar No. 23341
E-mail: pgoodson@brookspierce.com
Robert J. King III
NC State Bar No. 15946
E-mail: rking@brookspierce.com
Jill R. Wilson
N.C. State Bar No. 10585
E-mail: jwilson@brookspierce.com

*Attorneys for Charlotte-Mecklenburg Board of Education*

**OF COUNSEL:**

**BROOKS, PIERCE, McLENDON,**
  **HUMPHREY & LEONARD, L.L.P.**
2000 Renaissance Plaza
230 North Elm Street
Greensboro, NC  27401
Telephone: (336) 373-8850
Fax: (336) 378-1001

Wells Fargo Capitol Center
150 Fayetteville Street, Suite 1600
Raleigh, NC  27601
Phone: (919) 839-0300
Fax: (919) 839-0304

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: Charles Andrew Zajac and S. Luke Largess.

This the 31st day of May, 2012.

/s/Patricia W. Goodson
Patricia W. Goodson, Esq.
North Carolina State Bar No. 23341
E-mail: pgoodson@brookspierce.com
Robert J. King III
NC State Bar No. 15946
E-mail: rking@brookspierce.com
Jill R. Wilson
N.C. State Bar No. 10585
E-mail: jwilson@brookspierce.com

*Attorneys for Charlotte-Mecklenburg Board of Education*

**OF COUNSEL:**

**BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, L.L.P.**
2000 Renaissance Plaza
230 North Elm Street
Greensboro, NC  27401
Telephone: (336) 373-8850
Fax: (336) 378-1001

Wells Fargo Capitol Center
150 Fayetteville Street, Suite 1600
Raleigh, NC  27601
Phone: (919) 839-0300
Fax: (919) 839-0304