UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-34-RJC-DSC

| NADA FELDMAN, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on Defendant Charlotte-Mecklenburg Board of Education's ("Defendant" or "CMS") Motion for Summary Judgment. (Doc. No. 26).

## I. BACKGROUND

Plaintiff Nada Feldman ("Plaintiff") resigned her job as a teacher allegedly due to Defendant's "failure to provide a safe working environment and meeting [sic] her employer-provided ADA accommodations." (Doc. No. 1 at 9). Plaintiff initially claimed that Defendant violated: (1) the Americans with Disabilities Act ("ADA"), (2) Title VII's retaliation prohibition, (3) the North Carolina Constitution, and (4) Title VII's workplace harassment prohibition. (Id. at 10-12). Defendant moved to dismiss Plaintiff's Title VII and North Carolina Constitution claims. (Doc. No. 10). The Magistrate Judge recommended granting Defendant's motion. (Doc. No. 16). This Court adopted the Magistrate Judge's recommendation on October 7, 2011, leaving only Plaintiff's ADA claim pending. (Doc. Nos. 16; 17). Defendant now moves the Court to dismiss this final claim on summary judgment. (Doc. No. 26).

Plaintiff began working for Defendant in July 2006 and resigned on September 16, 2009, effective November 1, 2009. (Doc. Nos. 28-1: Plaintiff Dep. at 61-62; 28-2: Plaintiff Dep. at 4).

Plaintiff began as an eighth-grade language arts teacher at Alexander Middle School ("Alexander"). (Doc. No. 27-7: Smith Aff. at 1). Plaintiff was transferred to Ransom Middle School ("Ransom") in the fall of 2007 before returning to Alexander for the spring semester, in January 2008. (Id. at 3). Plaintiff taught at Ransom through the summer of 2009, before finishing her tenure with Defendant at Bradley Middle School ("Bradley"). See (Id. at 6). Plaintiff notified Defendant of her resignation on September 16, 2009, shortly into her first semester at Bradley. (Doc. No. 28-1: Plaintiff Dep. at 61-62).

On February 18, 2009, Plaintiff's doctor, Thomas Lessaris, MD ("Dr. Lessaris"), reported to Defendant that Plaintiff "should not be exposed to high concentrations of perfume or chemicals because of a documented condition." (Doc. No. 29-1). Defendant requested additional information in response. (Doc. No. 27-21). Dr. Lessaris sent another letter informing Defendant that Plaintiff suffered from "multiple chemical sensitivity" ("MCS") on March 10, 2009. (Doc. No. 29-17). Dr. Lessaris specified that Plaintiff should not be exposed to "paint, toxic odoriferous cleaning products, bleach, tar, scented candles, mold in carpet or room and new carpeting and the like." (Id.). Plaintiff supplied Dr. Lessaris with this list of chemicals. (Doc. No. 28-3: Lessaris Dep. at 4). Plaintiff testified that she also has adverse reactions to deodorant, cologne, and hand lotion. (Doc. No. 28-1 at 5, 6, & 13). Employee Relations Specialist Dosha Dacus called Plaintiff on Wednesday, March 11, 2009 to inform her that Defendant had "approved" Plaintiff's accommodations request related to her MCS. (Doc. No. 29-5 at 1). Dacus then followed up by letter dated March 13, 2009. (Doc. No. 27-21). Dacus wrote:

> In order for CMS to meet any reasonable accommodation request by an employee, please understand it may require an on-going "interactive process" to meet your needs. Therefore, we ask that you appropriately and professionally

2

report any future challenges (if any) within your work environment that may
adversely affect your medical condition. Then, authorized CMS administrators
will take the appropriate action(s) to correct the matter if the corrective action
does not cause an "undue hardship" as defined by the ADA and the *Interpretive
Guidance* on Title I to the ADA regulations (29 CFR, Part I 1630.9).

(Id.).

Immediately after Plaintiff first reported her MCS, and after Plaintiff experienced a problem with a student wearing perfume, Defendant suggested posting a sign in her classroom indicating her allergy to perfume. (Doc. Nos. 27-7: Joanna Smith Aff. at 3; 27-11: Email exchange). Plaintiff refused to post such a sign, arguing that doing so would violate her privacy rights. (Id.).

In the summer of 2009, Plaintiff had to move to a new school within CMS because of under-enrollment at Alexander. (Doc. No. 27-7: Smith Aff.). Plaintiff alleges that on June 24, Piedmont Middle School ("Piedmont") Principal Deirdra Gardner proposed various job requirements that would be impossible for Plaintiff to accomplish and otherwise denied Plaintiff any accommodation at Piedmont. (Doc. No. 34 at 20). Plaintiff never worked at Piedmont Middle School and was instead transferred to Bradley. (Id. at 21).

Plaintiff showed that harsh bleach was used to clean a bathroom at Bradley on September 9, 2009. (Id.). Principal Howard Barnhill believed that his cleaning staff did not use bleach because it is not an approved cleaning product for use at CMS. (Doc. No. 28-4 at 3-4). But on this occasion, the custodians bought the bleach themselves. (Id.). After the incident, Barnhill instructed the staff never to use bleach again and to work to dissipate any odors caused by their cleaning. (Id.).

The next day, on September 10, 2009, Plaintiff left school after she was allegedly subjected to an overwhelming smell of perfume. Plaintiff alleges that Bradley Assistant

Principal Melvin Etheridge arrived at her door without warning or reason and refused to allow her to close her door despite a strong smell of perfume in the hall. (Doc. No. 28-1: Plaintiff Dep. at 48-50). Plaintiff alleges that an unnamed student fainted from the smell. (Id.). Etheridge did not smell any perfume. (Doc. No. 27-3). Etheridge explained that Plaintiff had earlier kicked a student out of class for smelling of perfume. (Id.). Barnhill had the student in question searched to see whether she was in possession of any perfume, but nothing was found. (Id.). Barnhill also offered medical assistance to Plaintiff, but she refused. (Doc. No. 28-4). Plaintiff left school and never returned. (Doc. No. 28-1: Plaintiff Dep. at 48-50).

Plaintiff resigned soon after these incidents. Plaintiff's counsel contends that Dacus replied to Plaintiff's complaints about the bleach and perfume by advising her "to quit" and that "The CMS school system cannot guarantee a safe environment." (Doc. No. 34 at 35). Later, Dacus wrote to Plaintiff to assure her that Defendant would continue to work to address her ADA concerns. (Doc. No. 27-24 at 1). Dacus then authorized "administrative leave with pay" for Plaintiff since she was missing work but had already exhausted her sick leave. (Doc. No. 27-17: Dacus Aff. at 5). Plaintiff e-mailed Dacus to inform Defendant that she was resigning on September 16, 2009 and October 1, 2009, but contended that it was a "constructive resignation." (Doc. Nos. 27-25; 34-6). Later, Defendant sent an allegedly perfumed employee to return Plaintiff's personal effects. (Doc. No. 34 at 35). Plaintiff turned him away and refused delivery of these items. (Id.). Barnhill testified that he personally sniffed the employee who delivered Plaintiff's belongings before the employee left to see the Plaintiff and that Barnhill was satisfied that the employee was not wearing cologne. (Id. at 18).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") as early as December 2, 2009 and filed this action on January 20, 2011.

4

(Doc. No. 1).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for

the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. ANALYSIS

Plaintiff claims that Defendant discriminated against her on the basis of her disability, maintained an environment hostile to her disability, and failed to "comply with" or "enforce" the "reasonable medical accommodation granted to the Plaintiff under the ADA." (Doc. No. 1 at 10).

### A. Discrimination

Plaintiff has not presented any direct evidence of disability discrimination. Therefore, she must proceed under the McDonnell-Douglas burden-shifting framework. Williams v. Brunswick Cnty. Bd. of Educ., 725 F. Supp. 2d 538, 543 (E.D.N.C. 2010). "Under that framework, [Plaintiff] initially must establish a prima facie case by demonstrating that: (1) she is within the ADA's protected class; (2) she suffered adverse employment action; (3) at the time of the adverse employment action, she was performing her job at a level that met her employer's legitimate expectations; and (4) the adverse employment action occurred under circumstances giving rise to a reasonable inference of unlawful discrimination." Id. (citing Rhoads v. FDIC, 257 F.3d 373, 387 n.11 (4th Cir. 2001)).

The ADA precludes employers from discriminating against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1).

"Examples of 'major life activities' include 'functions such as caring for oneself,

performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" Lochridge v. City of Winston-Salem, 388 F. Supp. 2d 618, 625 (M.D.N.C. 2005) (quoting 29 C.F.R. § 1630.2(j)). Here, Plaintiff cites her multiple-chemical sensitivity as such an impairment which substantially limits her breathing when in the presence of common substances such as "perfume, paint, bleach, tar, scented candles, [and] cleaning solutions." (Doc. No. 1). While "a person does not qualify as 'disabled' simply by submitting evidence of a medical diagnosis of an impairment," Lochridge, 388 F. Supp. 2d at 625, the question "usually will not require scientific, medical, or statistical analysis." 29 C.F.R. § 1630.2(j)(1)(v). Also, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." Id. at (j)(1)(vii).

The parties strenuously contest whether Plaintiff suffers from a disability. Plaintiff presents testimony from her doctor that she has MCS and that she has had bad reactions to common substances. Defendant argues that Plaintiff's reactions are neither frequent nor serious enough to constitute a substantial impairment. But "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(1)(iii). Therefore, the Court will presume, without deciding, that Plaintiff is within the ADA's protected class.

Plaintiff must also show that she suffered an adverse employment action. Plaintiff resigned from CMS and argues that she was constructively discharged. "A constructive discharge occurs when an employer deliberately makes an employee's working conditions

7

intolerable and thereby forces [her] to quit [her] job . . . A plaintiff alleging constructive discharge must therefore prove two elements: deliberateness of the employer's action, and intolerability of the working conditions." Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985). Plaintiff alleges that Defendant "advised [her] to quit" and subjected her to "verbal attacks, threats, disparate treatment, harassment, unfair job demands, unwarranted disciplinary actions and refusal to address the discrimination." (Doc. Nos. 1 at 10; 34 at 35). While such conduct could amount to an adverse employment action, Plaintiff has failed to present evidence that these things occurred.

Plaintiff does not allege that she was subjected to any disciplinary action after she informed Defendant that she had MCS or at any point within 180 days of her EEOC filing. See 42 U.S.C. §§ 12117(a); 2000e-5(e)(1) (plaintiff must file a charge of discrimination within 180 days of an alleged act of discrimination). The only difficulties Plaintiff alleges suffering within this period were certain proposed job requirements from Piedmont Middle School Principal Deirdra Gardner. Plaintiff never worked at Piedmont Middle School and was never forced to perform any of the allegedly "unfair job demands" Principal Gardner laid out. On September 9, 2009, Plaintiff complained that bleach was used in the bathroom next to her classroom in Bradley Middle School. The next day, Plaintiff left school after she was allegedly exposed to a strong smell of perfume. Plaintiff resigned soon after these incidents. In her response brief to Defendant's motion for summary judgment, Plaintiff's counsel wrote that Dacus replied to Plaintiff's complaints by advising her "to quit and told Ms. Feldman that, 'The CMS school system cannot guarantee a safe environment' on the telephone." (Doc. No. 34 at 35). Plaintiff did not point the Court to any evidence in the record to support this statement. (Id.).

8

Even if Plaintiff had properly cited her account of such a conversation, her proof would be insufficient. Courts should put aside self-serving testimony from a plaintiff where it is unsupported by corroborating evidence and undermined by other credible evidence. See Blue v. U.S. Dep't of Army, 914 F.2d 525, 539 (4th Cir. 1990); Gray v. Spillman, 993 F.2d 1537, at *3 (4th Cir. May 17, 1993) (unpublished table decision). After Dacus allegedly encouraged Plaintiff to quit, and one day before Plaintiff's first resignation email, Dacus wrote to Plaintiff to assure her that Defendant would continue to work to address her ADA concerns. (Doc. No. 27-24 at 1). Plaintiff's September 16, 2009 and October 1, 2009 resignation emails make no mention of this alleged direction to quit despite Plaintiff's two paragraph argument that her resignation was a "constructive resignation." (Doc. Nos. 27-25; 34-6). Dacus testified that she told Plaintiff that while she could not absolutely guarantee that Plaintiff would not encounter any future issues, she was doing everything possible to prevent future issues and encouraged Plaintiff to seek out help from the Benefits department if she had to miss work for health reasons. (Doc. No. 27-17). Dacus then authorized "administrative leave with pay" for Plaintiff since she was missing work but had already exhausted her sick leave. (Id.). Plaintiff's allegation that Dacus told her to quit is not credible.

Plaintiff also argues that Defendant's alleged failure to provide a reasonable accommodation amounted to a constructive discharge. (Doc. No. 34 at 39) (citing Johnson v. Shalala, 991 F.2d 126, 132 (4th Cir. 1993) ("a complete failure to accommodate, in the face of repeated requests, might suffice as evidence to show the deliberateness necessary for constructive discharge.")). For the reasons discussed below in the Court's discussion of Plaintiff's reasonable accommodation claim, Plaintiff has failed to show that Defendant was guilty of "a complete failure to accommodate" or that she made "repeated requests" for a

9

specific accommodation.

Plaintiff has not presented any credible evidence that her resignation was a constructive discharge or that she otherwise suffered an adverse employment action. Plaintiff has failed to present a prima facie case of discrimination and her disability discrimination claim must be **DISMISSED**.

B.  Hostile Work Environment

"[A]n ADA plaintiff must prove the following to establish a hostile work environment claim: (1) [s]he is a qualified individual with a disability; (2) [s]he was subjected to unwelcome harassment; (3) the harassment was based on [her] disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." Fox v. G.M. Corp., 247 F.3d 169, 177 (4th Cir. 2001).

Plaintiff complains of mistreatment from students and conflict with some of Defendant's staff members; however, there is no evidence that any of this treatment was because of, or in any way related to, her alleged disability. (Doc. No. 1 at 2-10). Plaintiff neglected to address this claim in her response brief. Therefore, she has failed to meet her burden to show a genuine issue for trial on this point. Moreover, Plaintiff has not alleged any harassment sufficiently severe to have been capable of altering any term, condition, or privilege of her employment. Likewise, there is no basis for imputing liability for any rude treatment to Defendant rather than the individuals involved. Defendant has shown that its administration went to great lengths to remedy any issue that Plaintiff identified.

Plaintiff's hostile environment claim is **DISMISSED**.

C.  Failure to Accommodate

"In a failure to accommodate case, a plaintiff establishes a prima facie case by showing "(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." Rhoads v. FDIC, 257 F.3d 373, 387 n.11 (4th Cir. 2001).

An ADA plaintiff must file a charge of discrimination within 180 days of an alleged failure to accommodate. 42 U.S.C. §§ 12117(a); 2000e-5(e)(1); see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002) (holding that each discrete act of discrimination or retaliation occurs on the day it happened for purposes of measuring the 180 day limit). Plaintiff may have filed her charge as early as December 2, 2009. While she dated her Charge December 10, 2009, she represented that she filed an earlier, "original" charge on December 2, 2009. (Doc. No. 29-16). Thus, only claims related to Defendant's alleged failures to accommodate occurring on or after June 5, 2009 are timely. From June 5, 2009 until she turned in her resignation on September 16, 2009, Plaintiff alleges that: (1) Deirdra Gardner refused to ban odors and scents from Piedmont Middle School classes and represented that Plaintiff would have to be available to rove between classes and be available for outdoor activities; (2) harsh bleach was used in the restroom next to Plaintiff's classroom at Bradley on September 8, 2009; (3) Bradley Assistant Principal Etheridge demanded that Plaintiff keep her classroom door open despite perfumed substances being present in the hall on September 9, 2009; and (4) after Plaintiff's resignation, Defendant sent a heavily perfumed employee to return Plaintiff's personal effects.

Plaintiff originally informed Defendant of her MCS and her need to be free from "paint, toxic odoriferous cleaning products, bleach, tar, scented candles, mold in carpet or room and new carpeting and the like" in February 2009. Plaintiff testified that she also has adverse

reactions to deodorant, cologne, and hand lotion. (Doc. No. 28-1 at 5, 6, & 13). Plaintiff's March letters are the only communications Plaintiff cites as requests for reasonable accommodation. (Doc. Nos. 29-1; 29-17). Defendant responded that it "approved" her request and informed Plaintiff that meeting her request may involve "an-ongoing 'interactive process' to meet [her] needs." (Doc. No. 29-5). Once an employee informs her employer of the need for a reasonable accommodation it is the responsibility of both the employee and the employer to determine what precise accommodation is necessary. But ultimately it is Plaintiff's burden to demonstrate that there is some reasonable accommodation that could have allowed her to perform the essential functions of her job. Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 213 (4th Cir. 1994).

Plaintiff did not request any specific measure be taken to shield her from the list of chemicals. Immediately after Plaintiff reported her MCS, and after Plaintiff experienced a problem with a student wearing perfume, Defendant suggested posting a sign in her classroom indicating her allergy to perfume. (Doc. Nos. 27-7: Joanna Smith Aff. at 3; 27-11: Email exchange). Plaintiff refused to post such a sign, arguing that doing so would violate her privacy rights. (Id.). While Plaintiff has never specified the type of accommodation she believes would have allowed her to perform the job of a public middle school teacher, she seems to demand a complete ban on any chemicals or scented products at any school where she works. This is plainly an unreasonable request. A public school could never be free from any objectionable smell or any deodorant, perfume, cologne, hand lotion, or cleaning products.[1] Nonetheless,

---

[1] The Eastern District of Pennsylvania has held that an employee's similar request for an office devoid of objectionable smells was unreasonable. Kaufmann v. GMAC Mortg. Corp., No. 04-cv-5671, 2006 WL 1371185, at *12-13 (E.D. Pa. May 17, 2006).

Defendant made great efforts to attempt to accommodate Plaintiff's needs.

Plaintiff's complaints about Principal Gardner's refusal to accommodate her are meritless. Plaintiff never worked at Piedmont Middle School. Instead Plaintiff was assigned to Bradley, where Principal Barnhill attempted to meet her needs. Plaintiff argues that Barnhill's failure to prevent the use of bleach at his school on September 8, 2009 proves the contrary. However, Barnhill believed that his cleaning staff did not use bleach. (Doc. No. 28-4 at 3). Barnhill was correct that bleach is not an approved cleaning product for use at CMS. (Id. at 4). But on this occasion, the custodians bought the bleach themselves. (Id.). After the incident, Barnhill instructed the staff never to use bleach again and to work to dissipate any odors caused by their cleaning. (Id.).

On September 9, 2009, Plaintiff alleged that a student sprayed perfume in the classroom. (Doc. No. 27-2 at 3). Plaintiff kicked the student out of class. (Id.; Doc. No. 27-3). Barnhill had the student in question searched to see whether she was in possession of any perfume, but nothing was found. (Id.). Barnhill also offered medical assistance to Plaintiff, but she refused. (Doc. No. 28-4). Plaintiff left school and never returned.

Plaintiff has also failed to show that Defendant denied Plaintiff a reasonable accommodation when it allegedly returned Plaintiff's personal property via a perfumed employee. First, Plaintiff does not explain how this post-employment conduct can constitute a denial of a reasonable accommodation. Second, Barnhill testified that he personally sniffed the employee who delivered Plaintiff's belongings before the employee left to see the Plaintiff and that Barnhill was satisfied that the employee was not wearing cologne. (Id. at 18). Defendant has gone out of its way to accommodate Plaintiff's difficulties.

Plaintiff has failed to show that a reasonable accommodation existed that could have

13

allowed her to perform her job as a middle school teacher, or that Defendant failed to adopt such an accommodation. Plaintiff has failed to state a prima facie case for the denial of a reasonable accommodation. Her claim must be **DISMISSED**.

IV.     **CONCLUSION**

Plaintiff's discrimination claim must be **DISMISSED** because she did not present any credible evidence that her resignation was a constructive discharge or that she otherwise suffered an adverse employment action. Her hostile work environment claim is **DISMISSED** because Plaintiff did not present any evidence that any of Defendant's alleged mistreatment was in any way related to her alleged disability. Finally, Plaintiff failed to show that a reasonable accommodation existed that could have allowed her to perform her job as a middle school teacher, or that Defendant failed to adopt such an accommodation.

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment, (Doc. No. 26), is **GRANTED**.

Signed: August 21, 2012

Robert J. Conrad, Jr.
Chief United States District Judge